IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY MICHAEL SMITH,

    Petitioner,               No. CIV S-06-1762 LKK GGH P

    vs.

RICHARD KIRKLAND, Warden, et al.,

    Respondents.            ORDER

_____/

Introduction

        Petitioner, a state prisoner proceeding with appointed counsel, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for first degree murder by means of lying in wait with a firearm enhancement found true. First Amended Petition (FAP), p. 12.[1] Petitioner received a sentence of life without the possibility of parole for the conviction of murder with special circumstances, a sentence to be served consecutively to a term of 25 years to life for personally discharging a firearm, causing death. Id.

\\\\\

---

[1] The undersigned references the court's electronic case docket pagination.

Petitioner raises the following grounds for his challenge, contending that his first degree murder conviction must be set aside due to: 1) involuntary confession in violation of petitioner's federal constitutional rights to due process, counsel and against compelled self-incrimination; 2) his Fifth, Sixth and Fourteenth Amendment rights to due process and a fair jury trial were violated when the trial court instructed the jury with the prosecution's pinpoint jury instructions, directing jury's attention to specific items of evidence from which an inference of his guilt could be drawn, and then improperly refused petitioner's analogous instruction; 3) trial court's instructions on murder by lying in wait omitted an essential element of that crime and was facially erroneous. FAP, pp. 1-79.

To provide at least a limited context, the court sets forth a truncated summary of the case as set forth in the state court appellate opinion:

> Following a four-year affair, defendant Jerry Michael Smith asked his secretary, LaTrenda Mangram, to move in with him and his wife. Defendant's offer did not extend to her five children, and Mangram vanished from the women's shelter where she and her children took refuge. Following lengthy questioning, officers arrested defendant and charged him with murder by means of kidnapping and lying in wait. (Pen.Code, §§ 187, subd. (a), 190.2, subds. (a)(15) & (17), 207.) [] A jury found defendant guilty as charged. Sentenced to life without possibility of parole, defendant appeals, arguing his confession was obtained in violation of his rights under Miranda; []instructional error; the court improperly declined to dismiss the special circumstances allegation; violation of section 654; and cumulative error. We shall affirm the judgment.

Respondent's Lodged Document no. 3, Third District Court of Appeal unpub. decision, filed on 5/24/05, p. 1.

Discovery Motion

Petitioner filed a motion for leave to conduct discovery as to claim 1, pursuant to Rule 6 of the Rules Governing Section 2254 Cases, on November 6, 2007, to which respondent filed an opposition, on December 21, 2007, after which petitioner filed a reply, on January 6, 2008. On January 10, 2008, petitioner's motion for discovery came on for hearing. Jennifer

Sheetz appeared on behalf of petitioner; Barton Bowers represented respondent.

In Claim 1 of the First Amended Petition, petitioner contends that his "confession was involuntary, coerced from him by police after he had asserted his rights under Miranda [v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966)]:"

> Petitioner's confession was involuntary, coerced from him by police after he asserted his rights under *Miranda*. Police employed a two-step interrogation tactic to coerce petitioner's confession-delaying his formal arrest and *Miranda* admonition in a deliberate effort to pressure petitioner to confess. Petitioner only confessed under duress, after his will was broken by the coercive tactics of interrogating officers. Petitioner's involuntary confession was introduced against him at trial and extensively relied upon to convict him of first degree murder. His conviction must be set aside.

FAP, pp. 14, 19.

> Petitioner was subjected to a two-step interrogation process, deliberately employed by the police as a means of pressuring a confession. After voluntarily submitting himself to a polygraph test, petitioner was interrogated by police. During the custodial interrogation, petitioner repeatedly voiced his desire to leave the interrogation and repeatedly requested counsel. Seasoned police officers ignored petitioner's repeated requests which should have triggered necessary constitutional protections, and the officers continued to interrogate petitioner in a deceptive manner, without admonishing petitioner of his rights to counsel and his right to remain silent. The officers continued to interrogate petitioner until pressuring a confession. Once the pre-*Miranda* confession was secured, officers gave petitioner a rote rendition of his rights and recorded the confession. Under Supreme Court law, the trial court should have suppressed petitioner's confession, procured through an unlawful, deliberate two-step interrogation tactic as an involuntary confession.

FAP, p. 22. Petitioner maintains that under Missouri v. Seibert, 542 U.S. 600, 124 S. Ct. 2601 (2004),[2] post-warning confessions as a consequence of a deliberate two-step interrogation where

---

[2] In Missouri v. Seibert, 542 U.S. at 604, 124 S. Ct. 2601, the Supreme Court summarized:

> "This case tests a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession. Although such a

3

1  there is an objectively ineffective Miranda warning midstream must be suppressed.

2  Petitioner has informally sought discovery from, among others, the Sacramento
3  County Sheriff's Department, concerning police interrogation training procedures through
4  general written and oral requests, similar to a Freedom of Information Act (FOIA) request.
5  Motion, p. 6.[3] Petitioner has been provided "general training materials related to interrogation
6  tactics set forth in both written and video format from the Sacramento Sheriff's Office and
7  POST." Id. However, the Sheriff's Office has not disclosed the training of the individual
8  officers involved in this case, and, although the request had sought information as to training
9  seminars from 1999 through 2004, the information shared by the Sheriff's Office was limited to
10 documents relating to one seminar held in 2005. Id.

11 Petitioner has also not obtained requested records from the trial file relating to the
12 polygraph given prior to petitioner's interrogation which petitioner seeks to determine the record
13 of any Miranda warning given prior to his taking the test and has been unsuccessful in obtaining
14 any records related to the polygraph from trial counsel or the trial court. Motion, p. 7.

15 Petitioner has also been unsuccessful in obtaining the cooperation of petitioner's
16 wife, Felicia Smith (a.k.a. Felicia Rene Pridgen), despite investigators' efforts. Id. The
17 prosecution agreed to limit Ms. Smith's punishment to probation without jail time in exchange
18 for petitioner's confession, despite her admitted intimate relationship with the victim. Id.
19 Because the portion of petitioner's interrogation where the agreement was reached was not taped,

---

statement is generally inadmissible, since taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time. The question here is the admissibility of the repeated statement. Because this midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement, we hold that a statement repeated after a warning in such circumstances is inadmissible."

[3] Only the court's electronic docket pagination is referenced.

although the other portions were, the details as to the agreement are not known.  Motion, pp. 7-8, citing CT 775.  No evidentiary hearing on the question of coercive tactics related to the confession was held by the trial court, and Ms. Smith did not testify at trial but did receive probation with no jail time.  Id., at 8, citing RT 35.  Petitioner contends that the nature of the prosecution's agreement and the negotiations with petitioner's wife, if any, are critical to the coercion issue.  Id.  Plaintiff sets forth the three discovery as follows:

> Request No. 1: Records related to the Sacramento Sheriff's Department and to the investigators Officers Grant Stomsvik and Craig Hill, who conducted suspect and witness interviews in the above entitled case. The request covers two major areas: first, requests for the department's officer-training-related record-keeping procedures from 1995 to 2004; second, records specific to the identified officers (Stomsvik and Hill) – limited to records pertinent to training for the period of their hiring by the department up to 1/04, including but not limited to records kept pursuant to California Penal Code sections 13500, et seq.
>
> A. Departmental Records
> 1. Any reports, prepared since 1995 through the present to respond to the POST Commission's inquiries permitted under Penal Code section 13512 (adherence to standards).
> 2. Any written policies and standards developed by the Sacramento Sheriff's Department and pertinent training, including but not limited to, requirements for officer training; requirements for ongoing training; record-keeping and collection of information about officer training; individual officer attendance at training; individual officer certification within the meaning of the nomenclature used by the Sacramento Sherriff's Department, or by POST.
> 3. Any written policies and procedures, training, or instructions, provided to officers to cover the following topics pertinent to interviewing and interrogation:
>    a) Use of tape recorders during interviews/interrogations;
>    b) Use of video recorders during interview/interrogations;
>    c) Conducting interviews/interrogations of suspects who appear to be under the influence of a controlled substance;
>    d) Questioning of a person detained in a custodial setting;
>    e) Miranda warnings or admonitions;
>    f) Questioning outside of Miranda and/or questioning without a Miranda admonishment/warning in order to obtain

impeachment information;
g) The law of interrogation;
h) Any bibliography made available to officers and pertinent to interrogation and/or interviewing;
I) Taking notes during interviews/interrogations;
j) Maintaining/destroying notes of interviews/interrogations;
k) Use of interview room or interview logs [use of records evidencing sequences of events once an interview of interrogation begins through the point at which it terminates];
l) Extending promises, including promises for consideration, benefits; assistance on pending or possible prosecutions, to a witness or suspect;
m) Turning audio and/or videotapes on and off during the course of an interview/interrogation, including but not limited to standards, policies, instructions, and directives pertinent to off the-taped-record interviews or interrogations;
n) Uses of polygraphs; voice stress analyzers; hypnosis; or medications at the request of a department officer in the context of an interview/interrogation.

B. Individual Records for Officers Grant Stomsvik and Craig Hill

1. Records Requested

a) Any certificates pertaining to criminal investigation including witness or suspect interviews and interrogation covered in any basic, core, ongoing, or advanced training, including but not limited to the advanced training specifically available through the Presley Institute of Criminal Investigation described in Penal Code section 13519.9. This specific request covers any descriptions of the courses or lectures attended covering the topics of witness or suspect interviews, and/or interrogation either provided by training personnel employed by government agencies, including but not limited to state, county, local, or federal law enforcement personnel (including prosecutors), or by a contractor approved by POST, or by any other source of training whether or not approved by POST. Included here are training contractors such as Reid & Associates;
b) Records of attendance at any in-house training covering the topic of interviewing or interrogating witnesses and/or suspects;
c) Records of any training provided by Field Training Officers, or Department Officers to the named officers specific to witness or suspect interviews and/or interrogation;

        d) Records of any training on witness or suspect interviews and/or interrogation received in the course of preparing, applying or obtaining a promotion;
        e) Records of any training provided to, or supervision of, other Officers on interrogation or interviews of suspects or witnesses.

Request No. 2: Leave to depose Ms. Felicia Smith (aka Felicia Pridgen) for questioning regarding the negotiated deal with the Sacramento District Attorney's Office related to the confession of Mr. Smith.. Petitioner wishes for the Court to grant Petitioner leave to depose Ms. Smith in order to fully question her regarding her agreement with the Sacramento District Attorney's Office related to the present case and the circumstances underlying the agreement.

Request No. 3: Petitioner requests leave to subpoena any documents or audio records held by the Department of Justice related to the polygraph test given by Doug Mansfield to Jerry Smith on May 7, 2003, at or about 11:30am.

Motion, pp. 8-11.

Petitioner maintains that the state court of appeal decision relied upon facts that were not supported in the record in determining that petitioner's confession was voluntary and freely given. Motion, p. 12. Petitioner maintains that records regarding the officer training related record keeping procedures from 1995-2004, as well as records related to the specific interrogating officers, Stomsvik and Hill, citing <u>Miranda</u> and <u>CACJ</u>[4] v. Butts, 195 F.3d. 1039 (9th Cir. 1999) as noting "the importance of police training materials in considering interrogation tactics...." Motion, pp. 13-14. Petitioner contends that deposing Felicia Smith with respect to the details of her agreement with the D.A.'s office is important in light of her "intimate relationship with the victim" and the fact that she was not detained nor did she testify and is now uncooperative with petitioner's investigators. Motion, pp. 15-16. Petitioner seeks documents/audio records from the Department of Justice because the state appellate court found that petitioner had been given his <u>Miranda</u> rights during the polygraph and had waived them, which petitioner maintains is not supported by the record. Motion, pp. 16-17, citing the state

---

[4] California Attorneys for Criminal Justice.

7

1  appellate court opinion at 18.

2  <u>Opposition</u>

3        Respondent avers that petitioner has not shown good cause for discovery, seeks to
4  distinguish this case from that in <u>Missouri v. Seibert</u>, 542 U.S. 600, 124 S. Ct. 2601, notes
5  petitioner has conceded already having obtained relevant training materials, contends that
6  <u>Miranda</u> merely notes that police receive training, some of it in documentary form, and argues
7  that <u>Butts</u>, <u>supra</u>, is a 42 U.S.C. § 1983 case regarding police in cities other than Sacramento who
8  may have had a deliberate training policy to violate <u>Miranda</u>.  Opposition (Opp.), pp. 6-11. As to
9  the avowed need to depose Felicia Smith, respondent argues that the record of the case
10 demonstrates that Smith (Pridgen) was charged and convicted of a felony arising from her
11 involvement in this matter, place on formal felony probation and ordered to serve over 1,000
12 hours (1060 to be precise) of alternative sentencing. Opp., pp. 12-13, citing respondent's Lodged
13 Document no. 1, Clerk's Transcript, vol. 2, pp. 581, 585. As to petitioner's request for records
14 relating to the polygraph, respondent notes, inter alia, that no objection was raised by defense
15 counsel at trial with regard to whether or petitioner had been <u>Mirandized</u> prior to giving
16 petitioner the polygraph. Opp., pp. 15- 16, citing CT, vol. 1, 57-58, 81-82. Moreover,
17 respondent contends that petitioner made no incriminating statements during the polygraph exam
18 and no statements from the polygraph were introduced, thus whether or not he was properly
19 provided with his <u>Miranda</u> rights at that point is not the relevant question. Opp., pp. 16-17.
20 Respondent also contends that petitioner's effort to conduct discovery at this point implicates the
21 exhaustion doctrine because petitioner did not seek to augment the state court appellate court
22 record on direct appeal, nor did he file a state habeas petition. Opp., pp. 17-21. Respondent
23 avers that failure to seek the requested items in state court does not show good cause for such
24 discovery in federal court, and that it is not enough to dispute the facts under AEDPA. Opp., pp.
25 21-25.

26 \\\\\

Reply

Petitioner counters that petitioner has consistently maintained that the state court of appeal decision was "an unreasonable application of clearly established Federal law"[5] and "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." Reply, p. 4, citing FAP, p. 22, Traverse, pp. 3-4. Petitioner again highlights Missouri v. Seibert, supra, 542 U.S. 600, arguing that therein the Supreme Court has acknowledged police training for interrogation techniques that have pushed the bounds of Miranda and noted the effects on such techniques on the voluntariness of confessions that result. Reply, pp. 6-9. Petitioner maintains that knowledge and intent of the officers was a crucial consideration to the Seibert Court's consideration of voluntariness. Id. at 9-10.

Petitioner contends that circumstances surrounding Felicia Smith's involvement with the district attorney remain a mystery and the level of her involvement in the murder would have had an impact on petitioner's free will to assure that his children would not have both parents imprisoned, while no involvement on her part makes it unlikely that her plea bargain would have had a coercive impact on petitioner. Reply, p. 11. Petitioner avers that the nature of the Miranda warning given at the polygraph "would help illuminate Petitioner's understanding of his rights at the time of his confession." Id. at 12.

Petitioner also argues that respondent has waived any argument as to lack of exhaustion, having affirmatively stated in the Answer that petitioner had exhausted state remedies as to all claims, and having addressed the claim at issue therein. Reply, pp. 13-14, see Answer , pp. 9, 19. As to showing due diligence for discovery, petitioner notes that he was denied a de novo hearing on his suppression motion at the start of his trial, renewing the request when the court denied the motion based on the preliminary hearing transcript. Reply, pp. 14-16. Lodged Doc. no. 2, vol. 1, RT 4-6, 17-18.

---

[5] In the first amended petition (p. 22) (page 40 in electronic filing pagination), the actual phrase petitioner uses is "contrary to clearly established Federal law."

Discussion

Rule 6(a) of the Federal Rules Governing Section 2254 Cases provides that a habeas petitioner is entitled to discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6(a). Unlike ordinary civil actions, discovery in habeas corpus requires good cause. Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 1797 (1997). A party seeking discovery should demonstrate specific facts indicating that the sought discovery may well advance the party's cause. Speculation that discovery might advance the cause is insufficient. Id. at 909, 117 S.Ct. 1793, 1799.

In Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S. Ct. 1602 (1966), the Supreme Court held that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. []... [T]he following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

The undersigned noted at the hearing that petitioner has set forth a colorable claim in Claim 1, based on the record that is already before this court. This court has before it in respondent's lodged documents the extensive record of the relevant proceedings, motions, tape

1  transcriptions related to petitioner's Claim 1.  The entire reporter's transcript (RT) of the
2  September 16-17, 2003, preliminary hearing is included in the clerk's transcript (CT) at pages 46
3  through 237, with the detailed testimony of Detective Stomsvik (CT 53-129), including his
4  intensive cross-examination by defendant's counsel, as well as the testimony of Sergeant Hill
5  (CT 130-173).  See respondent's Lodged Document no. 1 (CT), vol. 1.  That same volume
6  contains the "memorandum of points and authorities filed by defense counsel in support of
7  motion to exclude defendant's involuntary statements at preliminary hearing" (CT 23-34), as
8  well as the prosecution's brief re: defendant's statements' admissibility (CT 35-41), the parties'
9  oral argument on the motion at the preliminary hearing and the court's ruling on the motion (CT
10 194-217).  In addition, the lodged record includes the defense's in limine trial motion to suppress
11 the defendant's statements pursuant to Miranda, with supporting memorandum (CT 288-310).
12 See Lodged Doc. no. 1, vols. 1-2.  Volumes 3 and 4 of the lodged clerk's transcript contains the
13 extensive transcription of the tape recorded portions of the 5/07/03 interview/confession at issue
14 (CT 610-987).  Lodged Doc. No. 2, vols. 1 through 3 is the entire reporter's transcript of the trial
15 (RT), which includes defense counsel's in limine motion, renewed prior to the trial from the
16 Miranda hearing at the preliminary hearing, wherein counsel asks for a de novo hearing on the
17 voluntariness question and is denied.  RT 3-35.  The trial testimony of Detectives Hill and
18 Stomsvik is part of the record.  Lodged Doc. no. 2, vol. 1, RT 252-264; 267-300.  Petitioner's
19 notice of appeal is lodged averring, inter alia, that "[t]he court erred in admitting defendant's pre-
20 confession admissions of 5-7-03 and defendant's confession that immediately following in
21 violation of defendant's state/federal right against self-incrimination, to counsel, and due
22 process/equal protection of law" (CT 606).  Lodged Doc. no. 2, vol. 3.  Also lodged is the Third
23 District Court of Appeal decision affirming the conviction, wherein the state appellate court,
24 inter alia, noted that "[d]efendant twice moved to suppress his confession as involuntary under
25 *Miranda*," (p. 2) and that "[d]efendant claims the trial court erred in denying him a de novo
26 hearing on his motion to exclude his confession," (p. 10) engaging in a lengthy review of the

record and analysis of the issues implicated by Claim 1 herein. Lodged Doc. no. 3., Cal. Ct. of Appeal decision, filed on 5/24/05, pp. 10-29 of a 35-page decision. Lodged Doc. no. 4 is petitioner's petition for review of the state appellate court decision before the state supreme court setting forth, inter alia, petitioner's claim that his confession was coerced and involuntary.

If a petitioner "failed to develop the factual basis for a claim" in state court, the federal court "shall not hold an evidentiary hearing on the claim" unless the petitioner can show that one of two narrow statutory exceptions is applicable. 28 U.S.C. § 2254(d)(2). A request to expand the record with new documentary evidence that is intended to serve the same purpose as an evidentiary hearing is subject to this same rule. Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005); Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736 (2004). The Ninth Circuit has not yet decided whether requests for discovery fall within the ambit of § 2254(e)(2). However, the reasoning of Cooper-Smith and Holland is equally applicable to discovery requests as they are designed to develop evidence on the merits of a claim.

If a petitioner "failed to develop the factual basis for a claim" in state court, the federal court "shall not hold an evidentiary hearing on the claim" unless the petitioner can show that one of two narrow exceptions is applicable. 28 U.S.C. § 2254(e)(2). Whether a petitioner failed to develop a claim in state court turns on whether the petitioner exhibited a lack of diligence or some greater fault in state court. Williams v. Taylor, 529 U.S. 420, 421, 120 S.Ct. 1479 (2000). Ordinary diligence requires that petitioner seek an evidentiary hearing in state court in the manner prescribed by state law. Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000). Under California law, an appellate court, when presented with a state habeas petition, determines whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they are ordered to do so. Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005). If the state court denies the petition without ordering formal pleadings, the case never reaches the stage where an evidentiary hearing must be requested and the petitioner's failure to request a hearing in state court does not trigger § 2254(e)(2). Id.

In the instant case, petitioner never filed a state habeas petition; however, petitioner appealed the denial of his suppression motion at the trial court level, wherein he had sought a de novo hearing, first to the state court of appeals and then to the state supreme court. The California Supreme Court denied the petition for review. Thus, petitioner fully exhausted the issue on direct appeal and due diligence does not require that a state habeas petition, enumerating the requests sought herein, also be filed.

Accordingly, although petitioner's habeas petition is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), which limits a district court's discretion in conducting evidentiary hearings and discovery, see 28 U.S.C. § 2254(e)(2), this court assesses the availability of an evidentiary hearing [or discovery] under pre-AEDPA law because petitioner exercised sufficient diligence in seeking to develop the factual basis of his claim in state court. Wiliams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000).

"Under pre-AEDPA law, a habeas petition is entitled to an evidentiary hearing [and discovery] on a claim where the facts are in dispute if 1) he has alleged facts that, if proven would entitle him to relief; and 2) he did not receive a full and fair evidentiary hearing in state court." See Silva v. Calderon, 279 F.3d 825, 853 (9th Cir. 2002).

In Schriro v. Landrigan, ___ U.S. ___, 127 S.Ct. 1933, 1940 (2007), the Supreme Court recently added another consideration in granting evidentiary hearings [or discovery]. The Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." 127 S.Ct. at 1940.

> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. The Ninth Circuit has recognized this point in other cases, holding that "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." Totten v. Merkle, 137 F.3d 1172, 1176 (1998) (emphasis deleted) (affirming the denial of an evidentiary hearing where the applicant's factual allegations "fl[ew] in the face of logic in light of ... [the applicant's] deliberate acts which are

easily discernible from the record").

Schriro v. Landrigan, supra, 127 S. Ct. at 1940.

In this case, while the undersigned has not yet determined the merits based on the record before this court of petitioner's Claim 1, and does not deny the discovery requests on that basis, the court does find, as set forth above, that the record of what occurred during petitioner's interrogation/interview is fully before the court and, as the undersigned stated at the hearing, that record speaks for itself. This is not a civil rights action involving a lack of training claim. The Miranda/voluntariness claim will be decided regardless of whether the officers were well trained, ill trained, or somewhere in the middle. While the Supreme Court has not permitted a purposeful disregard of Miranda to be rescued by a later advisement, those specific facts related to such an allegation stand on their own herein and are not sufficiently bolstered by reference to collateral training records, i.e., the purposeful violation either took place on the facts of record, or it did not. Moreover, a non-purposeful Miranda violation is not an avoidance which respondent can raise given the facts of this case. Respondent is not contending that non-deliberateness on the part of the police excuses an otherwise existent violation – respondent's position is that there was no violation at all. Similarly, petitioner's reasoning with respect to the polygraph is insufficient in that the court deems waived any reliance by respondent on the fact that a previous advisement was made during the polygraph session because of respondent's position taken in this motion. Finally, for the reasons expressed by respondent, knowledge of all the ins and outs of the deal between petitioner's wife and the prosecution, or whether the wife was more involved than previously thought, is not necessary. "The critical fact regarding voluntariness is that *petitioner struck this bargain* [petitioner would confess if his wife was not sent to jail]. In other words, what matters is that Petitioner himself believed he was acting for his wife's benefit, not that she benefitted in fact." Opposition at 9 (emphasis added). Police interrogation training materials, Felicia Smith's interactions with the district attorney or further investigation as to the invocation of Miranda at an inadmissible polygraph examination simply is not sufficiently germane to the

1  claim at issue.

2  Accordingly, IT IS ORDERED that petitioner's motion for leave to

3  conduct discovery, filed on November 6, 2007 (# 26), is denied.

4  DATED: 07/23/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
smit1762.dsc